■ ROSA PEREZ, Also Known as ROSA E. GALAN, Appellant, v ELIUD PEREZ, Respondent. [644 NYS2d 168]

In this action between ex-spouses for partition of their former marital residence, defendant husband's claim of sole title to the property by adverse possession prevailed at trial. On a prior appeal from the denial of summary judgment to either party, we held that there was "a sharp issue of fact as to whether [the husband's] possession was hostile and under a claim of right" (*Perez v Perez*, 186 AD2d 376).

In 1965, some three years into their marriage, the parties acquired the property in question as tenants by the entirety. Upon their divorce in 1976, joint ownership of the property was transformed, by operation of law, to a tenancy in common (*Eller v Eller*, 168 AD2d 414, 415). No judicial distribution of any marital property ensued after divorce.

This action for sale and partition of the property was commenced in 1989. Defendant's counterclaim asserted sole title based on his ten years of continuous, adverse possession. At trial, it was uncontradicted that plaintiff permanently left the premises in 1973. The divorce itself was extremely acrimonious, but whether the interpersonal hostility during and

subsequent to that action can be viewed as supportive of a hostile claim of title remains, on this appeal, unresolved.

By its special verdict, consisting of affirmative answers to five interrogatories, the jury found that defendant-husband's adverse possession claim met the five conventionally recognized requirements: that his possession of the premises was (1) actual, (2) open and notorious, (3) exclusive, (4) hostile and under claim of right, and (5) continuous for a period of ten years between the divorce and commencement of the action (*see, Brand v Prince*, 35 NY2d 634, 636). This form of verdict, together with the instructions accompanying it, might have sufficed had this been a contest between a squatter claiming title by adverse possession and a passive titular owner. Completely overlooked by the trial court, however, was the impact of RPAPL 541 on the co-tenancy situation here presented, which we hold to be controlling in this case. And while plaintiff's counsel utterly failed to preserve this point of law at any stage of the trial, we find that "the charge was so fundamentally deficient in an important aspect of the case that we reach the issue in the interest of justice" (*Raber Co. v 130 Lafayette St. Corp.*, 101 AD2d 794, 795; *see also, Abreu v Ferrer*, 198 AD2d 150, 152).

Where parties hold property as tenants in common, RPAPL 541 creates a statutory presumption which the adverse claimant must overcome in order to state a valid cause of action for adverse possession. This statutory presumption—that a possessory tenant in common holds the property for the benefit of the other co-tenant(s)—ceases only after the expiration of ten years of exclusive and hostile occupancy by the adverse claimant, or upon ouster of the co-tenant(s) (*Pravato v M.E.F. Bldrs.*, 217 AD2d 654; *Pitson v Sellers*, 206 AD2d 575). Thus, unless defendant demonstrated an actual ouster of plaintiff at the beginning of the period of exclusive possession in 1976, the period of adverse possession in this case could not even have begun to run until ten years later, in 1986 (*see, Kolb v Anisis*, 104 AD2d 399). The trial court in this case never asked the jury whether there was an ouster of plaintiff in 1976, and without such a finding, its instructions to the jury regarding defendant's possession of the property from 1976 to 1986 were erroneous, and the ensuing verdict failed to resolve the critical issue presented.

In that regard, exclusive possession by a co-tenant, alone, is not the equivalent of an ouster, nor, for that matter, does it conclusively establish adverse possession (*Trevisano v Giordano*, 202 AD2d 1071, *appeal dismissed* 84 NY2d 848; *see also,*

*Pitson v Sellers*, 206 AD2d, *supra,* at 577; *Perkins v Volpe*, 146 AD2d 617, *lv dismissed* 74 NY2d 791). Adverse possession requires "very obvious and overt acts which unmistakably repudiate a nonpossessory owner's right by one possessing the property" (*Matter of Kelley*, 140 Misc 2d 876, 879). Paying mortgage and taxes or maintenance expenses, and providing for upkeep of the property, do not constitute acts sufficient to establish a claim of right for purposes of adverse possession as against a co-tenant (*supra*).

Fundamental to a claim of adverse possession is the requirement that the initial entry onto the property by the co-tenant in exclusive possession was truly adverse (*see, Gallea v Hess Realty Corp.*, 128 AD2d 274, *affd* 71 NY2d 999). Such entry "must be strictly adverse to the title of the rightful owner in order for title to be acquired through adverse possession and if the first possession is by permission it is presumed to so continue until the contrary appears [citation omitted]. When possession is permissive in its inception, adverse possession will not arise until there is a distinct assertion of a right hostile to the owner and brought home to him" (*Shandaken Refm. Church v Leone*, 87 AD2d 950, 950-951, *lv denied* 57 NY2d 602).

Since the jury, pursuant to improper instructions from the court, failed to address the pertinent factual issues in accordance with applicable law, we remand the matter for a new trial. Concur—Ellerin, J. P., Wallach, Ross, Nardelli and Tom, JJ.